UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

December 06, 2018

RE: *Latasha G. o/b/o K.G. v. Commissioner, Social Security Administration*;
Civil No. SAG-17-3179

Dear Counsel:

On October 30, 2017, Plaintiff petitioned this Court to review the Social Security Administration's ("SSA's") final decision to deny her claim for Children's Supplemental Security Income ("SSI") on behalf of her minor child, K.G. ECF 1. I have considered the parties' cross-motions for summary judgment, and Plaintiff's Response. ECF 16, 21, 22. I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). This Court must uphold the decision of the Agency if it is supported by substantial evidence and if the Agency employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will grant the SSA's motion and affirm the SSA's judgment pursuant to sentence four of 42 U.S.C. § 405(g). This letter explains my rationale.

Plaintiff filed a claim for Children's SSI on behalf of K.G. on January 16, 2014, alleging a disability onset date of September 1, 2011. Tr. 152-60. The claim was denied initially and on reconsideration. Tr. 96-99, 103-04. A hearing was held on June 29, 2016, before an Administrative Law Judge ("ALJ"). Tr. 43-67. Following the hearing, the ALJ issued an opinion denying benefits. Tr. 15-38. The Appeals Council ("AC") denied Plaintiff's request for further review, Tr. 1-5, so the ALJ's decision constitutes the final, reviewable decision of the Agency.

The ALJ evaluated Plaintiff's claim using the three-step sequential process for claims involving Children's SSI, as set forth in 20 C.F.R. § 416.924. First, the ALJ determines whether the child has engaged in substantial gainful activity. § 416.924(a), (b). If the child has not engaged in substantial gainful activity, the ALJ proceeds to step two and determines whether the child has a severe impairment or combination of impairments. § 416.924(a), (c). At step two, if the child "do[es] not have a medically determinable impairment, or [the] impairment(s) is a slight abnormality or combination of slight abnormalities that causes no more than minimal functional limitations," then the ALJ will determine that the child is not disabled. § 416.924(c). However, if the ALJ determines that the child has a severe impairment or combination of impairments, then the ALJ proceeds to step three of the evaluation to determine whether the child's impairment or combination of impairments meets, medically equals, or functionally equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). § 416.924(d).

An impairment medically equals the listings "if it is at least equal in severity and duration to the criteria of any listed impairment." § 416.926(a). An ALJ may determine that the impairment medically equals a listed impairment if: (1) there are other findings related to the child's

impairment, not included in the listing requirements, that are at least of equal medical significance to the required criteria; (2) the child has an impairment not described in the listings with findings that are at least of equal medical significance to those of a closely analogous listed impairment; or (3) if the child has a combination of impairments, none of which meets a listing, but which result in findings that are at least of equal medical significance to those of a closely analogous listed impairment. § 416.926(b).

If an impairment neither meets nor medically equals a listing, an ALJ may determine that the child's impairment is functionally equivalent to a listed impairment. § 416.926a. The ALJ uses a "whole child" approach, when making a finding regarding functional equivalence. SSR 09–1p, 2009 WL 396031, at *2 (S.S.A. Feb. 17, 2009). The ALJ begins this approach by first considering the child's every-day functioning in all settings including "everything [the] child does throughout the day at home, at school, and in the community," as compared to children of the same age who do not have impairments. *Id.*; 20 C.F.R §416.926a(b). The ALJ then uses six domains or broad areas of functioning to assess the child's capacity to perform or not perform activities. SSR 09–1p, 2009 WL 396031, at *2. The six domains are (i) acquiring and using information, (ii) attending and completing tasks, (iii) interacting and relating with others, (iv) moving about and manipulating objects, (v) caring for yourself, and (vi) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). A child's impairment functionally equals the listings if the ALJ determines that the child has "marked" limitations in two domains or an "extreme" limitation in one domain. § 416.926a(d).

The ALJ evaluated Plaintiff's claim using the three-step sequential process for claims involving childhood SSI, as set forth in 20 C.F.R. § 416.924. The ALJ's findings at steps one and two favored Plaintiff's claim. At step one, the ALJ found that K.G. had not engaged in any substantial gainful activity since the application date. Tr. 18. At step two, the ALJ found that K.G. suffered from the severe impairments of Attention Deficit Hyperactivity Disorder ("ADHD"), Expressive Language/Speech Disorder, and Oppositional Defiant Disorder. *Id.* At step three, the ALJ found that K.G. did not have an impairment or combination of impairments that met or medically equaled any listing. *Id.* Additionally, the ALJ determined that K.G. did not have an impairment or combination of impairments that would be functionally equivalent to any listing. Tr. 19-37. Therefore, the ALJ determined that K.G. was not disabled for purposes of Children's SSI benefits. Tr. 38.

As an initial matter, Plaintiff asserts in her Motion that "the ALJ['s step three analysis] was wrong on both counts." P. Mot. 6-7. However, Plaintiff does not include any further argument that K.G.'s impairments meet or medically equal the listings, does not identify any particular listing that K.G. may meet, and does not point to any particular evidence suggesting K.G. meets or medically equals the listings. Claimants bear the burden of showing their impairments meet or medically equal the listings. *See Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (stating claimants bear the burden in steps one through four of evaluating adult disability claims, where step three involves deciding if the impairment meets or medically equals the listings) (citing *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam)). Here, Plaintiff has not met her burden on the issue of whether K.G's impairments meets or medically equals the listings.

Plaintiff's primary argument in support of her appeal is that the ALJ's findings of less than marked limitations in the functional areas of acquiring and using information, attending and completing tasks, and interacting and relating with others were not supported by substantial evidence. Plaintiff argues that the ALJ impermissibly "averaged" and "diluted" K.G.'s areas of impairment with areas of lesser or no impairment, and devalued indications of K.G.'s limitations by focusing on the lack of limitations in other areas. Pl. Resp. 2-4. I disagree.

The functional area of acquiring and using information refers to a child's ability to learn information and how well a child uses the information learned. 20 C.F.R. § 416.926a(g). In finding less than marked limitations in this area the ALJ relied, in part, upon K.G.'s 2014 report card showing "average to good" grades, a speech language therapist's opinion that K.G. "had made excellent progress in his speech," and a 2016 classroom observation report showing only a "minor problem" with listening comprehension. Tr. 28-29. In arguing for finding greater limitations in this area, Plaintiff cites to educational and medical record evidence suggesting limitations in this area, evidence which the ALJ discussed in his decision. Pl. Mot. 15-22.

The ALJ relied, in part, on K.G.'s 2013 IEP requiring only "somewhat minimal" special education of five thirty-minute sessions of special instruction per week. Tr. 28. The ALJ also noted that K.G. is in regular education in the fourth grade with a "504 plan." Tr. 29. Plaintiff argues that under to SSR 09-3p, 2009 WL 396025 (S.S.A. Feb. 17, 2009), K.G.'s special education and speech therapy needs should be a "clear indication" of marked limitations in the area of acquiring and using information. Pl. Mot. 16-17. The need for special education services or speech therapy is a relevant indicator for mental or physical impairments, but "[t]he kind, level and frequency of special education . . . or other accommodations a child receives can provide helpful information about the severity of the child's impairment(s)." SSR 09-3p, 2009 WL 396025, at * 3. Thus, the ALJ properly considered the frequency and length of the special education and speech therapy services in determining K.G.'s functional limitations.

The functional area of attending and completing tasks refers the ability to focus, maintain attention, how well and at what pace a child begins, carries through, and finishes activities, and the ease with which a child can change activities. 20 C.F.R. § 416.926a(h). Here, K.G.'s alleged improvement while on ADHD medication was central to the ALJ's finding of less than marked limitations. K.G. was prescribed Metadate on August 20, 2013, with increases in his Metadate dosage and the addition of Intuniv on November 20, 2013, and March 9, 2016. Tr. 441, 479. In finding improvement in the functional area of attending and completing tasks, the ALJ relied on K.G.'s nurse practitioner note that he does well when on ADHD medication, Tr. 493, notes from K.G.'s first grade teacher that he was more focused and calmer on medication, Tr. 208, and a 2015 exam indicating the medication produced "good symptom control," Tr. 482. Tr. 31. Plaintiff argues that the record does not show clear improvement while on medication, and points to medical treatment notes and negative reports from school during the 2013-2014 school year, Pl. Mot. 11-13, and a 2016 classroom observation indicating K.G. had a "major problem" with attentiveness, Pl. Resp. 3. A teacher questionnaire dated February 14, 2014, also specifically describes K.G.'s difficulty with completing tasks. Tr. 208. However, two report cards from later in 2014 indicate grades of "satisfactory" work habits, and the end of year report card indicated K.G. "show[ed] a great deal of growth this year. He has really blossomed." Tr. 219, 382.

Plaintiff argues the ALJ erred in describing K.G.'s treatment as "conservative." Pl. Mot. 14. The ALJ claimed that K.G. "has received only conservative treatment for his impairments (outpatient mental health treatment), and even though his dosages of medication have been adjusted, he has been on the same medications . . . for nearly 3 years." Tr. 23. I concur with Plaintiff's contention that the ALJ's assertion was not adequately supported. The suggestion by the ALJ that mental health treatment is conservative if it only consists of outpatient treatment is without basis. Furthermore, the prescribing of psychotropic medications in increasing dosages, over a period of three years, starting when a child is six years old, cannot be summarily labeled "conservative." However, despite this error, the ALJ's full analysis is sufficient to permit me to review the ALJ's decision and conclude that it is supported by substantial evidence.

The functional area of interacting and relating with others deals with how well a child "initiate[s] and sustain[s] emotional connections with others, develop[s] and use[s] . . . language . . . cooperate[s] with others, compl[ies] with rules, respond[s] to criticism and respect[s] and take[s] care of the possessions of others." 20 C.F.R. § 416.926a(i). In finding less than marked limitation in this area, the ALJ relied on the 2013-2014 report cards commenting on K.G.'s improvement interacting with his peers and his "wonderful job" with regard to his behavior, Tr. 32-33, 219, 382, medical records from 2014 and 2015 indicating no behavior problems, Tr. 33-34, 444, 482, and a 2016 classroom observation report reporting K.G.'s social interaction and general behavior were between "no problem" and a "minor problem," Tr. 34, 501. The ALJ also gave "great weight" to the opinion of K.G.'s nurse practitioner that there was "no evidence of limitation" in this functional area. Tr. 34, 493. In contrast, Plaintiff points to notes from K.G.'s medical providers and teachers spanning from 2013 to 2014, relating both specific instances and general observations of bad behavior. Pl. Mot. 10-14, 24-26.

Ultimately, my review of the ALJ's decision is confined to whether substantial evidence, in the record as it was reviewed by the ALJ, supports the decision and whether correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 404 (1971). Even if there is other evidence that may support Plaintiff's position, I am not permitted to reweigh the evidence or to substitute my own judgment for that of the ALJ. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Here, there is undoubtedly evidence in the record that indicates K.G. has some limitations in the functional areas, evidence which the ALJ extensively discussed in his decision and that Plaintiff recounts in her Motion and Reply. However, in considering the entire record, I find that the ALJ's determination that K.G. had less than marked limitations in the relevant areas is supported by the substantial evidence set forth above. Therefore, remand is unwarranted.

Thus, for the reasons given, this Court GRANTS the Commissioner's Motion for Summary Judgment, ECF 21, and DENIES Plaintiff's Motion for Summary Judgment, ECF 16. The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an order.

Sincerely yours,
/s/
Stephanie A. Gallagher
United States Magistrate Judge